**Dorothy Adams ESCHWEILER,**
**Plaintiff,**

v.

**GENERAL ACCIDENT FIRE AND LIFE**
**ASSURANCE CORPORATION, LTD.**
**OF PERTH, SCOTLAND, Defendant.**

**Civ. A. No. 5715.**

United States District Court
E. D. Wisconsin.

Oct. 19, 1955.

Ralph M. Hoyt, Shea & Hoyt, Milwaukee, Wis., for plaintiff.

Norman C. Skogstad, Quarles, Spence & Quarles, Milwaukee, Wis., for defendant.

TEHAN, Chief Judge.

The above entitled action having come on to be heard before the Court without a jury on the 25th day of January, 1955, plaintiff appearing by Shea & Hoyt, her attorneys, represented by Ralph M. Hoyt and Hamilton T. Hoyt, and the defendant appearing by Quarles, Spence & Quarles, represented by Norman C. Skogstad and Reuben W. Peterson, Jr., and the parties having stipulated in writing to the facts surrounding the death of plaintiff's decedent, and testimony having been taken in respect to his physical condition and the cause of death, and at the conclusion thereof, the parties having examined the briefs and record on appeal in the case of McDaniel v. Standard Accident Insurance Company, 7 Cir., 1955, 221 F.2d 171, and thereafter having agreed, with the consent of the Court, to defer the filing of briefs pending the decision in the McDaniel case, and such briefs having now been filed,

and this Court being of the opinion because of the substantial similarity of the insurance contract provisions and the facts surrounding the death that the instant case is governed by the holding in the McDaniel case,

Now, therefore, the Court does hereby make its Findings of Fact and Conclusions of Law as follows:

Findings of Fact.

1. Plaintiff is a citizen of the State of Wisconsin, and defendant is an insurance corporation organized under the laws of a foreign country and is a citizen or subject of such foreign country. The amount in controversy exceeds, exclusive of interest and costs, the sum of $3,000. Plaintiff is the widow of Alexander C. Eschweiler, Jr., who died a resident of the City of Milwaukee, Milwaukee County, Wisconsin, on December 11, 1951.

2. On December 11, 1951, Alexander C. Eschweiler, Jr. was the holder of Policy UA 664881 issued by the defendant insurance corporation, and said policy was in full force and effect on that date. It provided for the payment by the defendant to the plaintiff, Dorothy Adams Eschweiler, wife of the insured, of the sum of $7,500 in the event of the death of the insured "resulting solely from bodily injuries effected directly and independently of all other causes through accidental means." Paragraph 24 of the policy, so far as material, was as follows:

"24. This insurance shall not cover accident, injury, death or loss caused or contributed to directly or indirectly, wholly or partly by bodily or mental infirmity * * *; nor shall it cover any injury, fatal or non-fatal, sustained by the insured while in or on any vehicle or mechanical device for aerial navigation, or in falling therefrom or therewith or while operating or handling any such vehicle or device."

In addition a rider, attached to the policy and in force at the time of death, provided that the policy should not cover injuries sustained in any airplane ex-

cept those incurred while riding as a fare-paying passenger in a licensed passenger airplane provided by a common carrier upon a regular, established passenger route.

3. Alexander C. Eschweiler, Jr. was an architect fifty-eight years of a age in 1951, and a member of the architectural firm of Eschweiler & Eschweiler located in Milwaukee, Wisconsin. He was actively engaged in the prosecution of the work of the firm as his daily occupation, and appeared to be in good health. He was an experienced flyer and held a pilot's license. He made a practice of flying a Navion four-passenger plane, owned by the firm, in the course of his work of supervising various construction jobs in Wisconsin and Illinois.

4. On the morning of December 11, 1951 he took off from the airport at Milwaukee, alone in the plane bound for Eau Claire, Wisconsin, where the firm had a construction job in progress. While flying over Columbia County, Wisconsin, he encountered a sudden local snow storm of such intensity as to reduce visibility to a quarter of a mile or less; and in accordance with correct and approved practice for pilots of small planes under such circumstances, he undertook to make a forced landing on the ice-covered surface of Lake Wisconsin, which is an enlargement of the Wisconsin River a few miles south of Portage, Wisconsin.

5. As the landing was being made, with the three landing wheels (one front and two rear) in proper position, the forward wheel broke through the ice which was not strong enough to stand the weight of the plane. The plane turned over on its back, with its three wheels up in the air and the cockpit submerged. The plane came to rest at a point about 100 yards from the shore of the lake.

6. Mr. Eschweiler broke through the plexiglass canopy over the pilot's seat and started on foot for the nearest highway. This involved about half a mile of travel over the ice of the lake. The ice gave way under him several times and he was precipitated into the water of the lake, but pulled himself out each time and eventually reached land at a point near the public highway. The temperature of the air was about 20° F.

7. On December 11, 1951, at about 11:00 A. M., one Clarence Simonsen found Mr. Eschweiler's body in the road about two blocks north of the Oakland Park Resort. It was snowing very hard at the time, and the man was lying with his head to the north on his left side, about four feet west of the east edge of the roadway, which road is a fill-in across Lake Wisconsin. Simonsen helped the man to his feet and asked him what had happened. He said very slowly "My plane (pause) crashed." Simonsen asked him where as was from. All he could say was "Mil". Then his eyes rolled back into his head. He was wearing a flight jacket, no hat, air force shoes, and heavy trousers. He helped the man into the car and took him into the resort. There was blood on the man's hand and his tongue was swollen and blue. His pulse was very slow and he could not hold his head up. His clothes were covered with mud. From the road, the muddy tracks that Simonsen could see, indicated that Mr. Eschweiler had been crawling. There was a hole about fifteen feet long and four feet wide right at the shore's edge. The water is about three feet deep at this point and very muddy. From the edge of the water to where he found Mr. Eschweiler, the tracks also indicated that he had been crawling.

8. In the resort, Mr. Eschweiler was placed in a chair and blankets were placed about him. The proprietor of the tavern telephoned the sheriff at Portage, who tried to reach various physicians but had difficulty in locating one. By the time a physician arrived Mr. Eschweiler was dead. His death occurred at 11:06 A. M.

9. An autopsy was performed upon the body of the decedent on December 12, 1951 by Dr. Gorton Ritchie. Other than superficial abrasions of the hands and legs, there was no external evidence

of injury. Decedent had the normal amount of arteriosclerosis for a man his age and had a pulmonary fat embolism of moderate grade in the lungs. Otherwise there was no evidence of physical disease or injury.

10. Decedent was not injured in the forced landing of his airplane or in extricating himself from the airplane thereafter, but the great physical effort he expended in dragging himself to safety in a blinding snowstorm after the forced landing, caused cardiac failure and his death.

11. The death of Alexander C. Eschweiler, Jr., on December 11, 1951, resulted solely from bodily injuries effected directly and independently of all other causes through accidental means.

12. The injuries which caused Mr. Eschweiler's death were not sustained while he was in or on an airplane, while he was falling with or from an airplane, or while he was operating or handling an airplane.

13. Notice of the death of Mr. Eschweiler was given to the defendant on the day it occurred and a proof of claim was filed by plaintiff with defendant within the time limit in the policy, but the defendant on April 23, 1952, denied all liability under the policy.

### Conclusions of Law.

1. This Court has jurisdiction of this action under the provisions of Section 1332 of Title 28 of the U. S. Code.

2. The death of Alexander C. Eschweiler on December 11, 1951, was accidental within the meaning and coverage of the policy.

3. The airplane exclusion clause and rider in the policy does not bar liability in this action.

4. Plaintiff is entitled to judgment against defendant on the policy in the sum of $7,500, with interest at five per cent. per annum from December 11, 1951, together with her costs and disbursements.

Let judgment be entered accordingly.